UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEREMIAH BUCKLEY,

                    Plaintiff,

     -against-

THE METROPOLITAN TRANSPORTATION
AUTHORITY; MTA Police Officer STEPHEN
MEARS, Shield #764; and MTA Police Officer
DANILO RODRIGUEZ, Shield # 2096,

                  Defendants.

No.

**COMPLAINT**

       Plaintiff Jeremiah Buckley, by and through his attorneys, Emery Celli

Brinckerhoff & Abady LLP, alleges as follows:

## PRELIMINARY STATEMENT

       1.      On February 24, 2018, Plaintiff Jeremiah Buckley was brutally beaten in

Pennsylvania Station by two uniformed Metropolitan Transportation Authority ("MTA") Police

Officers and then falsely arrested for crimes he did not commit.

       2.      Plaintiff, who was 53 years old at the time of the assault, was in Penn

Station that evening waiting to meet a friend off the Long Island Rail Road.  While standing in a

public area of the station, Plaintiff sat and kneeled on the floor for approximately three minutes

to retrieve items from his travel bag.  After he stood back up, Plaintiff was approached by

Defendants, two MTA Police Officers, who accused him of sleeping on the floor.

       3.      Plaintiff explained that he was not sleeping on the floor, that he just

arrived at Penn Station and was waiting for a friend, and that he had sat down momentarily to

retrieve items from his bag.  Defendants continued to aggressively question him before leading him into a corner and beating him.

4.      Plaintiff suffered numerous physical injuries from this assault, including a punctured lung, multiple broken ribs, and damage to his knee that ultimately required surgery.

5.      To justify their actions, Defendants then arrested Plaintiff and charged him with four crimes.  These charges were baseless.  Plaintiff remained in police custody, first handcuffed in a prison cell, and then cuffed and shackled to a hospital bed for over twenty-four hours.  Defendants continued to taunt and threaten Plaintiff throughout his time in custody.

6.      Once he was finally brought to court, Plaintiff's charges were dismissed, with the District Attorney's consent, at his first two appearances on March 4, 2018 and April 24, 2018.

7.      Plaintiff seeks damages pursuant to 42 U.S.C. § 1983 for violations of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

## THE PARTIES

8.      Plaintiff **Jeremiah Buckley** is a citizen of the United States and at all relevant times hereto was a resident of the Bronx, New York.

9.      Defendant **Metropolitan Transportation Authority** is a municipal organization existing under the laws of the State of New York.

10.     Defendants **Stephen Mears** and **Danilo Rodriguez** (collectively, "Defendant Officers" or "Officers") were, at all times relevant to this complaint, police officers employed by the MTA.  In this role, Defendant Officers were duly appointed and acting officers, servants, employees and/or agents of the State of New York.  At all relevant times, they were acting in the scope of their employment and under color of state law.

2

**JURISDICTION AND VENUE**

11.      This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988, and New York state common law.

12.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367(a).

13.      The acts complained of occurred in the Southern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

**FACTUAL ALLEGATIONS**

**I.      Mr. Buckley is Brutally Assaulted by the Officers in Penn Station**

14.      On the night of February 23, 2018, Mr. Buckley, a then 53-year-old, longtime New York resident, was traveling home to New York on New Jersey Transit from Levittown, New Jersey.

15.      Upon arrival in Pennsylvania Station in midtown Manhattan, Mr. Buckley had planned to meet a friend.

16.      Mr. Buckley waited for his friend in the area where arrivals and departures are listed for the Long Island Railroad.  This area is immediately below and connected to the entrance to the station at West 34th Street between 7th Avenue and Pearson Park Street.

17.      After waiting for a few minutes, Mr. Buckley sat down to retrieve items from, and reorganize items within, his travel bag.  Mr. Buckley was sitting, first on one knee and then flat on the ground, for just under three minutes.

18.      During the three minutes that Mr. Buckley was sitting or kneeling, dozens of pedestrians walked past him in both directions unimpeded.

3

19.     Approximately 25 seconds after Mr. Buckley stood back up, Defendant Officer Mears approached him.

20.     Officer Mears accused Mr. Buckley of sleeping on the floor of Penn Station.

21.     Defendant Officer Rodriguez stood a few feet behind Officer Mears.

22.     Mr. Buckley responded to Officer Mears that he had not been sleeping, that he had just traveled to New York via train from New Jersey, and that he was waiting to meet a friend.

23.     Office Mears asked Mr. Buckley if he needed an ambulance, an offer which Mr. Buckley declined because he was not sick or injured.

24.     Officer Mears then became aggressive and told Mr. Buckley that unless he needed medical help, "[you] can't be over here."

25.     Officer Mears told Mr. Buckley to leave the public station.

26.     Mr. Buckley again attempted to explain that he was simply meeting a friend and offered to show Officer Mears his identification and his New Jersey Transit ticket.

27.     Mr. Buckley offered that Officer Mears could even to search his bags.

28.     Officer Rodriguez continued to stand behind Officer Mears but he turned his body away from Officer Mears and Mr. Buckley, seemingly observing other pedestrians.

29.     Approximately one minute after the Officers approached him, Mr. Buckley picked up his bags, and began to walk away from the Officers.

30.     Although Mr. Buckley knew he had the right to continue to wait in the location, he sought to avoid conflict with the Defendants by simply complying and leaving the area.

31.     But the Officers would not let Mr. Buckley leave.

32.     As he started to walk away, Officer Mears pushed Mr. Buckley in the chest and pointed in the opposite direction from where Mr. Buckley was walking.

33.     Officer Mears then threatened Mr. Buckley that he would "extract him" and gestured for Mr. Buckley to walk in front of him, stating "let me talk to you over here."

34.     Mr. Buckley followed Officer Mears' orders and began walking with him. Mr. Buckley questioned what was going on, whether he was under arrest, and why he was not permitted to leave.

35.     After a few steps, Officer Mears and Mr. Buckley stopped walking.

36.     Mr. Buckley questioned why he was not allowed to leave.

37.     Officer Rodriguez, who had been silent and seemingly disengaged from the confrontation to this point, came behind Mr. Buckley and grabbed his right arm.

38.     Startled by Officer Rodriguez's sudden contact from behind him, Mr. Buckley pulled his right arm away from Officer Rodriguez.

39.     Mr. Buckley continued to comply with and walk alongside Officer Mears who was holding his left arm.

40.     When Mr. Buckley tried to move his arm, he was violently attacked by both Officers.

41.     Officer Mears stuck his forearm in Mr. Buckley's chest and used the full force of his body to propel Mr. Buckley into the wall.

42.     As Mr. Buckley's head slammed into the marble wall, Officer Mears pulled him to the ground.

43.     While being held on the ground by Officer Mears, Mr. Buckley heard

5

Officer Rodriguez standing behind him say "watch this."

44.     Mr. Buckley then felt sharp sudden force against his ribs and heard a cracking sound.  Mr. Buckley was immediately in excruciating pain.

45.     The Officers continued to assault Mr. Buckley as they pinned him to the ground with Officer Mears's fully body weight on Mr. Buckley's legs and knees, stomping on his left hand and slamming their knees into Mr. Buckley's body.

**II.     Mr. Buckley is Arrested For No Reason**

46.     After assaulting him, the Officers hand cuffed Mr. Buckley's hands behind his back, pulled his sweatshirt over his head so that he could not see, and picked him up off the ground.

47.     When Mr. Buckley yelled for help, the Officers told him that "nobody gives a f**k about you, nobody cares."

48.     Eventually, Mr. Buckley was placed in a holding cell at the MTA Police Station located underground.

49.     Officer Rodriguez then continued his assault on Mr. Buckley.  He removed one of Mr. Buckley's hand-cuffs but would not remove the other one.

50.     Officer Rodriguez squeezed the remaining cuff against Mr. Buckley's wrists while taunting "how does that feel?"

51.     Officer Rodriguez then instructed Mr. Buckley to raise his hand in the air. When Mr. Buckley complied, Officer Rodriguez elbowed him in his (now broken) ribs.

52.     Mr. Buckley screamed that he needed an ambulance.  His screams only prompted more taunts from the Officers such as "f**k you," "there's nothing wrong with you," and "you're not getting an ambulance."

6

53.     As Mr. Buckley lay down in the cell screaming from the pain, the Officers' taunts turned graphic and sexual.  The Officers stood outside Mr. Buckley's cell making inappropriate gestures and obscene comments.

54.     Mr. Buckley lay in his cell writhing in pain for approximately one hour before an ambulance was called.

55.     Even once in the ambulance, the Officers continued to harass Mr. Buckley, telling the ambulance driver that Mr. Buckley was "full of shit" and a "liar."  They also continued to sexually taunt Mr. Buckley.

56.     When they arrived at Bellevue Hospital, Mr. Buckley's shoes were removed and he was dragged in his socks in the rain by the Officers from the ambulance to the Hospital.

**III.     Mr. Buckley Finally Receives Medical Attention at the Hospital**

57.     At approximately 2:00 a.m., about two hours after he first encountered the Defendants, Mr. Buckley was admitted to Bellevue Hospital.

58.     Mr. Buckley received an MRI and chest x-ray which revealed that he had two broken ribs and a punctured lung.

59.     He was given oxygen and morphine to manage the immense pain from these injuries.

60.     Mr. Buckley also suffered an abrasion on his left hand and had pain in his right knee resulting from the incident.

61.     Mr. Buckley remained handcuffed and shackled at his ankles for the duration of his time at the hospital.

62.     Mr. Buckley remained at Bellevue Hospital until approximately 10:00 am

the following morning.

### IV.     Mr. Buckley's Charges are Promptly Dismissed

63.     After he was discharged from the hospital, Mr. Buckley was arraigned in New York County Criminal Court on February 25, 2018.

64.     The Officers fabricated four charges in order to justify their unlawful arrest and beating of Mr. Buckley.

65.     Mr. Buckley was charged with (1) resisting arrest in violation of New York Penal Law § 205.30; (2) attempted assault in the third degree in violation in violation of New York Penal Law § 110/120/00(1); (3) disorderly conduction in violation of New York Penal Law § 240.20(5); and (4) Harassment in the Second Degree in violation of New York Penal Law § 240.26 (1).

66.     On March 4, 2018 (only eight days after his arraignment), the disorderly conduct charge was dismissed with the People's consent.  The Court set a conference for April 24, 2018.

67.     On March 21, 2018, after serving a subpoena on the MTA, Mr. Buckley's criminal defense counsel received a video of the incident.  Mr. Buckley's counsel met with the District Attorney to show him the video shortly thereafter.

68.     The District Attorney agreed to dismiss all charges at the April 24, 2018 conference.

### V.     Mr. Buckley's Ongoing Injuries

69.     Mr. Buckley's physical injuries persisted after the incident.

70.     Broken ribs are a notoriously painful injury.  Mr. Buckley continued to suffer immense pain in his ribs and chest as well as difficulty breathing from his fractured ribs

8

and punctured lung for months following this beating.

71.     Mr. Buckley's right knee pain also persisted.  The trauma from the incident exacerbated a pre-existing knee condition and Mr. Buckley ultimately needed knee surgery.

72.     Mr. Buckley's hand remained cut and sore for weeks as a result of the Officers' stomping on it as he lay on the floor.

73.     Mr. Buckley has suffered continual headaches since the incident as a result of having his head slammed against the marble wall.

74.     Mr. Buckley has also suffered emotional distress as a result of this beating. He feels anxious and uneasy any time he sees police, and despite spending most of his life in New York, is afraid to leave his neighborhood or to travel on the public transit system.  He has had trouble sleeping, flashbacks to the incident, and has had increased difficulty regulating his emotions since this assault.

75.     The parties have stipulated that so long as Mr. Buckley allowed the Defendant MTA to conduct a sworn examination as required by Public Authorities Law § 1276(4), Defendants would not assert and a defense for failure to comply with New York Public Authorities Law § 1276(2).

76.     Mr. Buckley sat for a sworn examination as required under New York Public Authorities Law § 1276 on November 16, 2018.

77.     Over thirty days have elapsed since the claims upon which this action is founded were presented to a member of the MTA designated for that purpose.  The MTA has neglected or refused to make an adjustment or payment thereof.

78.     This action has been commenced within one year after Plaintiff's arrest on

9

the morning of February 24, 2018.

**FIRST CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Excessive Force
(Defendants Mears and Rodriguez)

79.      Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

80.      At all relevant times, Defendant Officers were acting under color of state law in their individual and official capacities within the scope of their respective employments as police officers for the MTA.

81.      By assaulting Plaintiff and using excessive, brutal, and unconscionable force against Plaintiff, and by failing to intervene and prevent each other from using excessive force, Defendant Officers deprived Plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Fourth and Fourteenth Amendments of the United States Constitution.

82.      Defendant Officers acted beyond the scope of their authority and jurisdiction to willfully, knowingly, and intentionally deprive Plaintiff of his constitutional rights.

83.      As a direct and proximate result of Defendant Officers' misconduct and abuse detailed above, Plaintiff sustained the damages herein before alleged.

**SECOND CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
False Arrest and False Imprisonment
(Defendants Mears and Rodriguez)

84.      Plaintiff repeats and realleges the above paragraphs as if the same were

10

fully set forth at length herein.

85.     Defendant Officers wrongfully and illegally arrested Plaintiff or failed to intervene in the wrongful and illegal arrest of Plaintiff.

86.     The wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Plaintiff was carried out without any basis, without Plaintiff's consent, and without probable cause or reasonable suspicion.

87.     At all relevant times, Defendant Officers acted forcibly in apprehending and arresting Plaintiff.

88.     Throughout this period, Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, and falsely charged.

89.     At all times, the unlawful, wrongful, and false arrest of Plaintiff was without basis and without probable cause or reasonable suspicion.

90.     Defendant Officers' misconduct occurred without any fault or provocation on the part of Plaintiff.

91.     Defendant Officers acted under pretense and color of state law.  Defendant Officers acted beyond the scope of their authority and jurisdiction to willfully, knowingly, and intentionally deprive Plaintiff of his constitutional rights as secured by the Fourth and Fourteenth Amendment to the United States Constitution.

92.     As a direct and proximate result of Defendant Officers' misconduct and abuse detailed above, Plaintiff sustained the damages hereinbefore alleged.

11

### THIRD CAUSE OF ACTION
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Malicious Prosecution
(Defendants Mears and Rodriguez)

93.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

94.     Defendant Officers maliciously and without justification commenced criminal proceedings against Plaintiff.

95.     Defendant Officers commenced these charges falsely, maliciously, in bad faith, and without probable cause.  At no subsequent point did any Defendant Officer attempt to intervene and prevent the unlawful prosecution of Plaintiff.

96.     After two months of proceedings in criminal court in which Plaintiff was forced to defend himself, all charges against Plaintiff were terminated in Plaintiff's favor.

97.     Defendant Officers acted under pretense and color of state law.  Defendant Officers acted beyond the scope of their authority and jurisdiction to willfully, knowingly, and intentionally deprive Plaintiff of his constitutional rights as secured by the Fourth and Fourteenth Amendment to the United States Constitution.

98.     As a direct and proximate result of Defendant Officers' misconduct and abuse detailed above, Plaintiff sustained the damages hereinbefore alleged.

### FOURTH CAUSE OF ACTION
Common Law False Arrest and False Imprisonment
(All Defendants)

99.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

100.     Defendant Officers wrongfully and illegally arrested Plaintiff or failed to

intervene to prevent the wrongful and illegal arrest of Plaintiff.

101.    The wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Plaintiff was carried out without any basis, without Plaintiff's consent, and without probable cause or reasonable suspicion.

102.    At all relevant times, Defendant Officers acted forcibly in apprehending and arresting Plaintiff.

103.    Throughout this period, Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, and falsely charged.

104.    At all times, the unlawful, wrongful, and false arrest of Plaintiff was without basis and without probable cause or reasonable suspicion.

105.    Defendant Officers' misconduct occurred without any fault or provocation on the part of Plaintiff.

106.    Defendant Officers acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard for Plaintiff's rights, privileges, welfare, and well-being, and are guilty of egregious and gross misconduct toward Plaintiff.

107.    The MTA, as the employer of the Defendant Officers, is responsible for Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

108.    As a direct and proximate result of the Defendants' misconduct and abuse detailed above, Plaintiff sustained the damages hereinbefore alleged.

**FIFTH CAUSE OF ACTION**
Common Law Malicious Prosecution
(All Defendants)

109.    Plaintiff repeats and realleges the above paragraphs as if the same were

13

fully set forth at length herein.

110.    Defendant Officers maliciously and without justification commenced criminal proceedings against Plaintiff.

111.    Defendant Officers commenced these charges falsely, maliciously, in bad faith, and without probable cause.

112.    Defendant Officers failed to subsequently intervene to prevent the unlawful prosecution of Plaintiff.

113.    After months of proceedings in criminal court in which Plaintiff was forced to defend himself, all charges against Plaintiff were terminated in Plaintiff's favor.

114.    Defendant Officers are responsible for the malicious prosecution of Plaintiff during this entire period.  Defendant MTA, as the employer of Defendant Officers, is responsible under the doctrine of *respondeat superior*.

115.    As a direct and proximate result of the Defendants' misconduct and abuse detailed above, Plaintiff sustained the damages hereinbefore alleged.

### SIXTH CAUSE OF ACTION
Assault
(All Defendants)

116.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

117.    By reason of the foregoing, and by threateningly approaching Plaintiff and intentionally slamming him against the wall and holding him on the ground, kneeing him in the ribs, stomping on his hand, and kneeing and kicking his body, Defendant Officers, acting in their capacity as MTA police officers and within the scope of their employment as such, intentionally placed Plaintiff in apprehension of imminent offensive contact and displayed the ability to

14

effectuate such contact, and thereby committed a willful, unlawful, unwarranted, and intentional assault upon Plaintiff.

118.    The assault committed by Defendant Officers was unnecessary and unwarranted in the performance of their duties as MTA police officers and constituted an unreasonable and excessive use of force.

119.    Defendant MTA, as employer of the Defendant Officers, is responsible for Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

120.    As a direct and proximate result of Defendants' misconduct and abuse detailed above, Plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CAUSE OF ACTION
Battery
(All Defendants)

121.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

122.    By reason of the foregoing, and by intentionally slamming Plaintiff against the wall, kneeing him in the ribs, stomping on his hand, and kneeing and kicking his body, Defendant Officers, acting in their capacity as MTA Police Officers and within the scope of their employment as such, committed a willful, unlawful, unwarranted, and intentional battery upon Plaintiff.

123.    The battery committed by Defendant Officers was unnecessary and unwarranted in the performance of their duties as MTA police officers and constituted an unreasonable and excessive use of force.

124.    Defendant MTA, as employer of the Defendant Officers, is responsible for Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

15

125.    As a direct and proximate result of Defendants' misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

### JURY TRIAL DEMANDED

126.    Mr. Buckley demands a trial by jury.


**WHEREFORE,** Plaintiff respectfully requests that this Court enter an Order granting him compensatory and punitive damages against each Defendant; granting Plaintiff reasonable attorneys' fees, costs and disbursements pursuant to the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988; and granting Plaintiff such other and further relief as this Court deems just and equitable.


Dated: February 22, 2019
       New York, New York


                                        EMERY CELLI BRINCKERHOFF &
                                        ABADY LLP


                                        By:   _____/s/_____

                                              Katherine Rosenfeld
                                              David Berman
                                              600 Fifth Avenue
                                              New York, New York 10020
                                              (212) 763-5000

                                              *Attorneys for Plaintiff Jeremiah
                                              Buckley*