```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/17/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JEREMIAH BUCKLEY,                                  :
                                                   :
                              Plaintiff,           :
                                                   :       **OPINION & ORDER**
                                                   :
         -against-                                 :       19-CV-1683 (JLC)
                                                   :
THE METROPOLITAN TRANSPORTATION                    :
AUTHORITY, *et al.*,                               :
                                                   :
                              Defendants.          :
                                                   :
------------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

Plaintiff Jeremiah Buckley commenced this action against the Metropolitan Transportation Authority and MTA Officers Stephen Mears and Danilo Rodriguez asserting claims of false arrest and false imprisonment, malicious prosecution, and excessive force pursuant to 42 U.S.C. § 1983 and New York common law. Buckley alleges that Defendants violated his federal constitutional rights in connection with a 2018 incident at Pennsylvania Station in Manhattan by falsely arresting him and using excessive force in effecting his arrest.

In advance of trial, Defendants have moved for partial summary judgment on Buckley's federal and state false arrest claims. For the reasons which follow, the Court denies Defendants' motion.

### I.   BACKGROUND

The following facts are drawn from the parties' Local Rule 56.1 Statements and summary judgment briefing and are undisputed unless otherwise noted.

1

### A. Factual Background

Shortly before midnight on February 23, 2018, Buckley arrived at New York's Pennsylvania Station, returning home from a two-week trip to Philadelphia. Deposition of Jeremiah Buckley conducted on January 14, 2020 ("Buckley Dep."), Dkt. No. 59-1, at 130–37; Hearing of Jeremiah Buckley conducted pursuant to N.Y. Public Authorities Law § 1276(4) on November 16, 2018 ("Buckley Hearing"), Dkt. No. 59-2, at 27. Buckley briefly exited the station to smoke a cigarette and then re-entered the station. Buckley Dep. at 139–40; Buckley Hearing at 26–27. Buckley had planned to meet a friend near the arrivals-and-departures board located inside the station. Buckley Dep. at 139; Buckley Hearing at 28–29.

While waiting for his friend to arrive, Buckley stood in the station corridor for approximately two-and-a-half minutes. Surveillance Video ("Video"), Declaration of Steve S. Efron dated December 11, 2020 ("Efron Decl.") Ex. H, Dkt. No. 59, at 15:50–18:30. Buckley then sat on the ground for approximately three minutes while he rearranged items in his travel duffel bag. *Id.* at 18:32–21:27. During these three minutes, Buckley was kneeling on one knee for approximately one minute, *id.* at 18:32–19:30, and then sitting on the ground with his legs fully extended for approximately two minutes. *Id.* at 19:30–21:27. During the time Buckley was standing and sitting on the floor, he did not speak to any other person in the station. *Id.* at 15:50–21:27.

Shortly after Buckley stood up, Defendants Mears and Rodriguez (collectively, "the Officers"), who had been patrolling Penn Station as part of the

MTA's Homeless Assistance Program, approached Buckley. *Id.* at 21:40; *see also* Deposition of Stephen Mears conducted on December 9, 2019 ("Mears Dep."), Dkt. No. 59-3 at 54;[1] Deposition of Danilo Rodriguez conducted on October 21, 2019 ("Rodriguez Dep."), Dkt. No. 64-2 at 76–77.[2] After an approximately 45 second conversation with Mears, Buckley picked up his duffel bag and began to walk away from the Officers. Video at 22:00–22:47.[3] Mears then placed his hand on Buckley's chest and pointed in the opposite direction. *Id.* at 22:48; *see also* Buckley Hearing at 41; Buckley Dep. at 181–82. Approximately 20 seconds later, and after another verbal exchange, Mears grabbed Buckley's arm and pulled him towards a coffee shop further down the passageway. Buckley Hearing at 42–43; Buckley Dep. at 184. At that moment, Defendant Rodriguez approached Buckley from behind and grabbed his other arm. Buckley Hearing at 42–43. Buckley drew his arm away from Rodriguez, and a physical struggle ensued. Video at 23:09–24:20; Buckley

---

[1] Excerpts of the Mears Deposition can be found at both Dkt. No. 59-3 (Ex. C to Efron Decl.) and Dkt. No. 64-1 (Ex. A to Berman Decl.).

[2] The Homeless Assistance Program was established in January 2018 to "reduce the population of homeless in facilities while enforcing the laws, rules and regulations governing the MTA transit system and facilitating alternative homeless services whenever possible as well as improving the overall safety and security of MTA properties." MTA Operational Order 18-01, Efron Decl. Ex. E, Dkt. No. 59-5. This program was discontinued in Penn Station within a year of its adoption. Mears Dep., Dkt. No. 64-1, at 32.

[3] The parties provide differing accounts regarding the content and tenor of the verbal exchanges that took place between Buckley and the Officers. Because these verbal exchanges are not germane to Defendants' motion, the Court will not summarize them here.

Hearing at 43–44. The Officers then arrested Buckley. Mears Dep., Dkt. No. 59-3 at 77.

On February 25, 2018, Mears executed a misdemeanor complaint that set forth four charges against Buckley, including a charge for disorderly conduct under New York Penal Law § 240.20(5), the only charge at issue in this motion. *See* Declaration of David Berman in Opposition to Defendants' Motion for Partial Summary Judgment dated January 8, 2021 ("Berman Decl.") Ex. C, Dkt. No. 64-3. In support of the disorderly conduct charge, the complaint states that Buckley "with intent to cause public inconvenience, annoyance and alarm and recklessly creating a risk thereof, obstructed . . . pedestrian traffic." *Id.* The complaint sets forth the following factual predicate for the disorderly conduct charge:

> [Mears] observed the defendant sitting in the middle of the concourse of the above location, namely Pennsylvania Station, with his property spread out around him. As a result of the defendant's conduct, the concourse was blocked in a matter [sic] that prevented any pedestrians from proceeding past the defendant without changing their course.

*Id.*

## B. Procedural History

On November 13, 2020, Defendants submitted a pre-motion conference letter requesting permission to move for partial summary judgment on Buckley's § 1983 and common law false arrest, false imprisonment, and malicious prosecution claims. Dkt. No. 54. Shortly thereafter, on November 16, 2020, the parties consented to my jurisdiction for all purposes, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. Dkt. No. 55.

On December 11, 2020, Defendants filed their motion for partial summary judgment to dismiss the second and fourth causes of action for false arrest and false imprisonment. *See* Motion for Partial Summary Judgment, Dkt. No. 58; Efron Decl.; Defendants' Memorandum of Law in Support of Partial Summary Judgment ("Def. Mem."), Dkt. No. 60; Defendants' Local Rule 56.1 Statement ("Def. Rule 56.1"), Dkt. No. 67.[4] On January 8, 2021, Buckley filed his opposition papers. Berman Decl.; Plaintiff's Motion in Opposition to Defendant's Motion for Partial Summary Judgment ("Pl. Opp."), Dkt. No. 65; Plaintiff's Response to Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("Pl. Resp. Rule 56.1"), Dkt. No. 62; Plaintiff's Counter-Statement of Material Facts Pursuant to Local Rule 56.1 ("Pl. Rule 56.1"), Dkt. No. 63. Defendants filed reply papers on January 22, 2021. Defendant's Reply Memorandum of Law in Support of Motion for Partial Summary Judgment ("Def. Reply"), Dkt. No. 66.

## II. DISCUSSION

### A. Summary Judgment Legal Standard

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the

---

[4] Although Defendants' November 13th letter indicated that Defendants intended to move for summary judgment on both the false arrest and malicious prosecution claims, Dkt. No. 54 at 3–4, Defendants' motion is limited to the false arrest/false imprisonment claims. Def. Mem. at 1.

absence of a genuine issue of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of material fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

### B. Analysis

Defendant moves for partial summary judgment on Buckley's § 1983 and New York common law claims for false arrest. *See* Def. Mem. at 1.[5] Section 1983 provides redress for the deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983. To prevail on a § 1983 claim, a plaintiff must establish (1) the violation of a right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

### 1. Governing Law

An arrest undertaken without a warrant "must be supported by probable cause or else it violates the Fourth Amendment." *United States v. Valentine*, 539 F.3d 88, 93 (2d Cir. 2008). "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); *accord Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007). Under New York law, a plaintiff claiming false arrest must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement,

---

[5] The Court's discussion of Buckley's false arrest claim encompasses his false imprisonment claim because "[u]nder New York law, 'the tort of false arrest is synonymous with that of false imprisonment.'" *Liranzo v. United States*, 690 F.3d 78, 91 n.13 (2d Cir. 2012) (quoting *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991)).

(3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003); *see also Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)). For a defendant to be liable on such a claim, personal involvement is required. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006).

An officer is lawfully entitled to make an arrest where probable cause exists, and the existence of probable cause is a complete defense to an action for false arrest under both § 1983 and state law. *See Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003); *Jenkins*, 478 F.3d at 84. Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer*, 63 F.3d at 119 (quotation marks and citations omitted). "When determining whether probable cause exists courts must consider those facts available to the officer at the time of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (citation omitted); *accord Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.").

"[P]robable cause does not require an awareness of a particular crime, but only that some crime may have been committed." *Ackerson v. City of White Plains*, 702 F.3d 15, 20 (2d Cir. 2012) (quotation marks and citation omitted); *see also*

8

*Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) ("[A]n arrest is not unlawful so long as the officer ha[d] . . . probable cause to believe that the person arrested . . . committed any crime."). Provided there is probable cause, a person may be arrested for any offense committed in an officer's presence, no matter how minor, so long as that offense is a crime. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

"In a lawsuit claiming false arrest, the burden of establishing the absence of probable cause rests on the plaintiff." *Lin v. City of New York*, No. 14-CV-9994 (PAE), 2016 WL 7439362, at *7 (S.D.N.Y. Dec. 21, 2016) (cleaned up). On summary judgment, the existence of probable cause may be determined as a matter of law "if there is no dispute as to the pertinent events and knowledge of the officers." *Weyant*, 101 F.3d at 852. However, where material facts on which such events and knowledge turn are disputed, summary judgment is not appropriate. *Id.*

Defendants argue that the Officers had "probable cause, or at least arguable probable cause, to arrest Buckley for disorderly conduct." Def. Mem. at 1. They further contend that because the Officers had arguable probable cause to arrest Buckley, they are entitled to qualified immunity. Def. Mem. at 2. Buckley counters that there are genuine disputes of material fact that preclude summary judgment on his false arrest claim and on the Officers' qualified immunity defense. Pl. Opp. at 12.

9

## 2. Discussion

### a. False Arrest Claim

Defendants argue that the Officers had probable cause to arrest Buckley for disorderly conduct. Def. Mem. at 1. To prove disorderly conduct under N.Y. Pen. Law § 240.20, the prosecution must establish the following: "(i) the defendant's conduct [was] 'public' in nature, (ii) [was] done with 'intent to cause public inconvenience, annoyance, or alarm' or with recklessness as to 'a risk thereof,' and (iii) [] match[es] at least one of the descriptions set forth in the statute." *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001) (quoting N.Y. Pen. Law § 240.20). Defendants claim that the "description" of "obstruct[ing] vehicular or pedestrian traffic," N.Y. Pen. Law § 240.20(5), is applicable to Buckley's conduct. Def. Mem. at 8.

The parties dispute whether the evidence supplied probable cause that Buckley acted with the requisite intent and whether he was "obstruct[ing] vehicular or pedestrian traffic." Determining intent is difficult in practice for an officer in the field, and therefore latitude is "accorded to officers considering the probable cause issue in the context of mens rea crimes." *Kass v. City of New York*, 864 F.3d 200, 210 (2d Cir. 2017) (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 393 (2d Cir. 2013)). However, this latitude "does not absolve a police officer from having to defend his probable cause determination altogether." *Evans v. City of New York*, No. 12-CV-5341 (MKB), 2015 WL 1345374, at *47 (E.D.N.Y. Mar. 25, 2015).

Construing all reasonable inferences in favor of Buckley as the non-moving party, the Court holds that genuine disputes of material fact exist regarding

whether the officers had probable cause to conclude that Buckley intentionally or recklessly acted to cause public inconvenience, annoyance, or alarm. Defendants acknowledge that Buckley likely did not intend "to block people," Mears Dep., Dkt. No. 59-3 at 59, and instead argue that "although Buckley may not have acted with the intent to cause injury to another, he was reckless to the risk thereof." Def. Mem. at 13. However, there is insufficient evidence in the record to support such a finding. The undisputed evidence merely shows that Buckley knelt and then sat on the floor of Penn Station's 34th Street passageway for several minutes to rearrange items in his duffel bag and retrieve his cellphone. Video at 18:32–21:27. There is no evidence that Buckley interacted with any pedestrians in the passageway or was aware that he may have inhibited anyone's ability to pass him. Video at 19:30–21:27. A jury considering the totality of the circumstances could reasonably conclude that Buckley's presence on the floor for just a few minutes, in a wide passageway, at an hour when Penn Station is not likely to be heavily trafficked, did not demonstrate the requisite intent or "recklessness" to the risk of causing inconvenience, annoyance, or alarm, and therefore find that there was no probable cause for his arrest. In addition, by the time Mears and Rodriguez began approaching Buckley, he had already stood up and arguably was no longer at risk of obstructing pedestrian traffic. Video at 21:28–21:40. A jury could reasonably consider this evidence as undermining the Officers' probable cause determination.

In addition, the parties' dispute about whether Buckley was obstructing pedestrian traffic further precludes summary judgment. To establish probable

11

cause under § 240.20(5), the Second Circuit has required "a showing that the putative offender was 'actually and immediately blocking' the pedestrian or vehicular traffic in question." *Holmes v. City of New York*, No. 14-CV-5253 (LTS), 2016 WL 915332, at *3 (S.D.N.Y. Mar. 4, 2016) (quoting *Zellner*, 494 F.3d at 372); *see also Abusikin v. City of New York*, No. 18-CV-4582 (AT), 2021 WL 930349, at *4 (S.D.N.Y. Mar. 11, 2021). "New York courts have interpreted this statute to permit punishment only where the conduct at issue does more than merely inconvenience pedestrian or vehicular traffic." *Jones v. Parmely*, 465 F.3d 46, 59 (2d Cir. 2006) (citations omitted); *see also Kayo v. Mertz*, No. 19-CV-365 (PAE), 2021 WL 1226869, at *9 (S.D.N.Y. Mar. 31, 2021) (material dispute of fact as to whether plaintiff obstructed traffic at toll plaza precluded summary judgment even when plaintiff's presence compelled another motorist to reverse course and proceed to another toll lane); *Hughes v. Lebron*, No. 14-CV-9479 (PAE), 2016 WL 5107030, at *11 (S.D.N.Y. Sept. 19, 2016) (insufficient probable cause for arrest based on violation of § 240.20(5) even when plaintiff's displacement of metal barrier nearly struck passerby and required five pedestrians to navigate around it).

Defendants argue that the Video depicts three pedestrians who had to "go around" or "sway" in order to circumvent Buckley, Def. Mem. at 9; Mears Dep. Dkt. No. 64-1 at 210–13, and therefore the Officers had probable cause to arrest Buckley for disorderly conduct. Buckley, pointing to both the Video and Defendants' deposition testimony, disputes that "the concourse was blocked in a manner that prevented any pedestrians from proceeding past [him] without changing course."

12

Pl. Opp. at 3, 7–8; Pl. Resp. 56.1 ¶ 15. Buckley further argues that even if three pedestrians were forced to circumvent him, his actions did not constitute anything more than an "inconvenience" to other pedestrians. *Id*. at 7–8. A jury could reasonably find, based on Buckley's version of events and the video evidence, that Buckley was not blocking pedestrian traffic and that the Officers therefore lacked probable cause to arrest him for violating § 240.20(5). A jury could also accord significant weight to the video evidence demonstrating that many pedestrians were unaffected and unimpeded by Buckley's presence on the floor, and thereby find that the Officers lacked probable cause to arrest Buckley for violating § 240.20(5).

In sum, the Court cannot find probable cause as a matter of law for Buckley's arrest for disorderly conduct because the questions of whether Buckley (1) possessed the requisite mens rea, and (2) was in fact blocking pedestrian traffic beyond a level of mere inconvenience are in dispute. *See, e.g., Abusikin*, 2021 WL 930349, at *4 (denying summary judgment on false arrest claim because jury could find that plaintiff was not blocking traffic and therefore there was no probable cause to arrest plaintiff under § 240.20(5)); *Faraone v. City of New York*, No. 13-CV-9074 (DLC), 2016 WL 1092669, at *4 (S.D.N.Y. Mar. 21, 2016) (same).

### b. Qualified Immunity

Defendants separately argue that summary judgment is warranted on Buckley's false arrest claims because the Officers are entitled to qualified immunity under both federal and state law. Def. Mem. at 10–14. "An officer is entitled to qualified immunity against a suit for false arrest if he can establish that he had 'arguable probable cause' to arrest the plaintiff." *Soto v. City of New York*, No. 13-

13

CV-8474 (LTS) (JLC), 2017 WL 892338, at *4 (S.D.N.Y. Mar. 6, 2017) (quoting *Garcia v. Doe*, 779 F.3d 84, 92 (2d Cir. 2014)). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Zalaski*, 723 F.3d at 390. The reasonableness standard for qualified immunity under New York law is the same as the standard applied in a federal qualified immunity analysis, and therefore, "where an officer's actions are deemed objectively reasonable, that officer will be immune under both federal and state law." *Edwards v. City of New York*, No. 15-CV-3637 (SHS), 2019 WL 3456840, at *8 (S.D.N.Y. July 31, 2019). Qualified immunity is intended to give "government officials breathing room to make reasonable but mistaken judgments" and to protect "all but the plainly incompetent or those who knowingly violate the law." *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). Because qualified immunity is an affirmative defense, defendants bear the burden of proving arguable probable cause. *See Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011).

Here, Defendants have not demonstrated that summary judgment is warranted on the question of qualified immunity in the context of Buckley's false arrest claim because, for the reasons stated above, they have not demonstrated as a matter of law that there was arguable probable cause to arrest Buckley. *See, e.g., Kayo*, 2021 WL 1226869, at *12 (disputed factual issues precluding summary judgment on false arrest claim similarly precluded summary judgment on basis of

qualified immunity); *Soto*, 2017 WL 892338, at *4 (denying summary judgment on question of qualified immunity from false arrest claim when defendant officers "failed to demonstrate as a matter of law that there was arguable probable cause to arrest plaintiff").

Viewing the disputed facts in the light most favorable to Buckley, a jury could conclude that a reasonably competent officer would not have found probable cause to arrest Buckley for disorderly conduct, making Buckley's arrest a violation of a clearly established constitutional right. Because "the record plainly reveals the existence of genuine issues of material fact relating to the qualified immunity defense," the Court denies Defendants' motion on this basis as well. *Kayo*, 2021 WL 1226869, at *12 (quoting *Hurlman v. Rice*, 927 F.2d 74, 82 (2d Cir. 1991)). At trial, Defendants will be free to ask the Court "to direct the jury to make special findings as to the facts known to them at the time of arrest, so as to enable a clear determination as [to] whether these facts supplied arguable probable cause." *Id.* (citing *Warren v. Dwyer*, 906 F.2d 70, 75–76 (2d Cir. 1990) (where factual disputes preclude "early disposition of the [qualified immunity] defense, the jury should decide these issues on special interrogatories"); *see also Jones v. Treubig*, 963 F.3d 214, 225 (2d Cir. 2020) ("We believe that use of special interrogatories in this case resolves the difficulty of requiring the jury to decide what the facts were that the officer faced or perceived and requiring the court to make the ultimate legal determination of whether qualified immunity attaches on those facts") (citing *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003)).

15

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment is denied. The Clerk of Court is directed to close the motion at Docket Number 58 and mark it as "denied."

**SO ORDERED.**

Dated: September 17, 2021
      New York, New York

_____
JAMES L. COTT
United States Magistrate Judge